UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
In re: OXYCONTIN ANTITRUST LITIGATION                             :
                                                                  :   04-MD-1603 (SHS)
------------------------------------------------------------------x
COMMONWEALTH OF KENTUCKY,                                         :
EX REL. JACK CONWAY, ATTORNEY                                     :   This document relates to:
GENERAL, and PIKE COUNTY,                                         :
                                                                  :   08 Civ. 3380 (SHS)
                              Plaintiffs,                         :
                                                                  :   OPINION & ORDER
              -against-                                           :
                                                                  :
PURDUE PHARMA, L.P., PURDUE PHARMA,                               :
INC., THE PURDUE PHARMA FREDERICK                                 :
COMPANY, INC., D/B/A THE PURDUE                                   :
FREDERICK COMPANY, PURDUE                                         :
PHARMACEUTICALS, L.P., P.F.                                       :
LABORATORIES, INC., ABBOTT                                        :
LABORATORIES, and ABBOTT                                          :
LABORATORIES, INC.,                                               :
                                                                  :
                              Defendants.                         :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

   The Commonwealth of Kentucky through its Attorney General Jack Conway and Pike County (collectively, the "Commonwealth") commenced this action in Kentucky state court alleging that defendants Purdue Pharma, L.P., Purdue Pharma, Inc., The Purdue Pharma Frederick Company, Inc., Purdue Pharmaceuticals, L.P., P.F. Laboratories, Inc., Abbott Laboratories, and Abbott Laboratories, Inc. (collectively, "Purdue") violated Kentucky state law by misleading health care providers, consumers, and government officials regarding the risks of addiction associated with the prescription drug OxyContin. Defendants removed the action to the United States District Court for the Eastern District of Kentucky, claiming federal subject matter jurisdiction pursuant to

28 U.S.C. §§ 1331, 1332(d)(2)(A). The United States Judicial Panel on Multidistrict Litigation ("MDL") subsequently transferred the action to this Court pursuant to 28 U.S.C. § 1407 for inclusion in the *In re OxyContin Antitrust Litigation* (04-mdl-1603) MDL proceeding.

The Commonwealth has now moved pursuant to 28 U.S.C. § 1447(c) to have this action remanded to Kentucky state court. Purdue opposes the motion on the grounds that (1) the Court has federal question jurisdiction; and (2) the case constitutes a putative class action removable to federal court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A) ("CAFA"). Because defendants have failed to meet their burden of establishing that the Court has subject matter jurisdiction over this action, plaintiffs' motion to remand is granted.

## I. BACKGROUND

### A. Facts

The following facts are taken from the amended complaint.

OxyContin is an opioid analgesic drug approved for use in the management of moderate to severe pain. (Am. Compl. ¶¶ 23, 24.) Purdue—the company that designs, sells, and distributes OxyContin—allegedly misled and deceived consumers, medical providers, and government officials regarding the safety, efficacy, and appropriate uses of OxyContin, in particular with regard to the risks of addiction associated with the drug. (*Id.* ¶¶ 2, 10, 81.) Specifically, plaintiffs maintain that from December 1995 to June 2001, Purdue supervisors and employees marketed and promoted OxyContin to medical care providers as "less addictive, less subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other pain medications," despite knowing that such

assertions were false or misleading. (*Id.* ¶ 42.) According to plaintiffs, those misrepresentations and omissions prevented physicians and patients from accurately assessing the appropriate uses and risks of OxyContin, causing physicians to prescribe OxyContin and Kentucky patients to request OxyContin more often than they would have had they known the truth about the drug. (*Id.* ¶¶ 68, 84.) Plaintiffs assert that Kentucky citizens have become addicted to OxyContin, causing serious adverse health consequences, including death, as well as such problems as "the commission of criminal acts to obtain OxyContin." (*Id.* ¶¶ 2, 68.)

The State of Kentucky covers the health care costs—including the costs of OxyContin prescriptions and drug addiction treatment—for indigent and otherwise eligible Kentucky citizens through its state Medicaid program and its Pharmaceutical Assistance Program. (*Id.* ¶¶ 1, 7.) Kentucky's Medicaid program, which is a joint federal and state program, covers approximately 669,000—or one in six—Kentuckians and accounts for twenty percent of the state budget. (*Id.* ¶ 77.) Kentucky alleges that Purdue's purported wrongful marketing and promotion of OxyContin has resulted in the state paying for prescriptions that never would have been written and medical services provided that never would have been required in the absence of Purdue's deceptive practices. Pike County, which is located in Kentucky, alleges that it has spent millions of dollars to investigate, apprehend, prosecute, and incarcerate individuals who, "due to the fraudulently concealed addictive nature of OxyContin, have resorted to criminal means to continue their addiction." (*Id.* ¶¶ 4, 8-9.)

Based on these allegations, plaintiffs assert claims for: (1) violation of the Kentucky Medicaid Fraud Statute, KRS § 205.8463 and § 446.070; (2) violation of KRS §

3

15.060, which authorizes Kentucky's Attorney General to institute an action to recover fraudulent monies that have been paid out of the state's treasury; (3) violation of the Kentucky False Advertising Statute, KRS § 517.030 and § 446.070; (4) public nuisance; (5) unjust enrichment and restitution; (6) indemnity; (7) negligence; (8) violation of state antitrust law; (9) strict liability; (10) common-law fraud; (11) conspiracy and concert of action; and (12) punitive damages. The Commonwealth seeks damages based on the Medicaid-related expenses it has incurred, as well as other equitable and injunctive relief.

B. Procedural History

In October 2007, the Commonwealth filed this action in Pike County Circuit Court. Purdue removed the case to the U.S. District Court for the Eastern District of Kentucky, claiming federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1332(d)(2)(A). In November 2007, Purdue moved to transfer the action to this Court for inclusion in the OxyContin antitrust MDL on the ground that plaintiffs had asserted an antitrust claim against Purdue. The MDL panel granted Purdue's request and transferred the action to this Court in April 2008. (*See* MDL Transfer Order, Dkt. No. 1.) The Commonwealth moved to remand the action to Kentucky state court in October 2009. Purdue opposed the motion on the ground that the Court had previously stayed all activity in the MDL proceeding pending a final determination of the validity of the relevant patents. In March 2011, the Court granted the parties' joint request to lift the stay for the limited purpose of deciding the Commonwealth's motion to remand. (Order dated Mar. 11, 2011, Dkt. No. 28.) That motion is now fully briefed.

**II. STANDARD**

The Commonwealth contends that Purdue's removal of this case from state to federal court was improper because this Court lacks subject matter jurisdiction. It cannot be gainsaid that federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *Quick v. Shell Oil Co. (In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.),* 399 F. Supp. 2d 356, 362 (S.D.N.Y. 2005) (internal quotation marks omitted); *see Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57-58 (2d Cir. 2006).[1] Federal courts are required to construe the removal statute narrowly, resolving any doubts against removability. *See Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991). If the removing party cannot establish its right to removal by competent proof, the removal is improper, and the district court must remand the case to the court in which it was filed. *Quick*, 399 F. Supp. 2d at 362; *see* 28 U.S.C. §§ 1447(c), 1453(c)(1).

Purdue asserts two grounds supporting removal of this action to federal court: first, the amended complaint raises substantial and disputed federal questions, and second, this is a putative class action removable under CAFA. The Court now addresses each of these grounds.

**III. DISCUSSION**

   A. Federal Question Jurisdiction

---

[1] When an action is transferred pursuant to 28 U.S.C. § 1407, the transferee court applies "its interpretations of federal law, not the constructions of federal law of the transferor circuit." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993). Accordingly, the Court applies the law of the Second Circuit in deciding whether to remand this action.

5

### 1. Legal Standard

A defendant may remove a civil action filed in state court to federal court if the action is one "arising under" under federal law. 28 U.S.C. § 1331; *see id.* § 1441(a). A case arises under federal law where a well-pleaded complaint establishes either that (1) "federal law creates the cause of action[,]" or (2) "the plaintiff's right to relief [on a state-law claim] necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006). Here, Purdue does not contend that the Commonwealth has pled a federal cause of action. Rather, Purdue asserts that certain of the Commonwealth's claims necessarily depend on the resolution of a substantial question of federal law.

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), the U.S. Supreme Court established three requirements for federal question jurisdiction to exist over a state-law claim: (1) the state-law claim must necessarily raise a stated federal issue; (2) that stated federal issue must be actually disputed and substantial; and (3) a federal forum must be able to entertain the state-law claim without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Grable* creates only a "slim category" of cases involving state-law claims that may be removed to federal court. *Empire*, 547 U.S. at 701. Indeed, the "mere presence" of a federal issue in a state cause of action does not confer federal jurisdiction. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 805, 813 (1986); *see also Empire*, 547 U.S. at 701 ("[I]t takes more than a federal element to open the 'arising under' door.") (internal quotation marks omitted). Nor is the simple assertion of a federal interest enough to warrant the exercise of federal jurisdiction. *Empire*, 547 U.S. at 701.

Federal defenses are also insufficient to confer federal question jurisdiction, "even if the defense is anticipated in the plaintiff's complaint, and even if . . . the federal defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983). Nevertheless, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Id.* at 22. Federal jurisdiction will lie even where the plaintiff has "artfully" avoided mentioning federal law as long as "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 9. This exception to the well-pleaded complaint rule is "necessarily a narrow one." *In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1430-31 (2d Cir. 1993).

   2.   *The Court Lacks Federal-Question Jurisdiction*

The first issue before this Court is whether it has federal-question jurisdiction over this action. Notably, the vast majority of federal district courts that have considered this question in analogous cases brought by attorneys general against pharmaceutical companies for reimbursement of Medicaid-related expenses have found that they lacked federal question jurisdiction under *Grable* and have remanded the actions to state court. *See generally State of South Carolina v. GlaxoSmithKline, LLC*, 11-cv-01475, 2011 U.S. Dist. LEXIS 80522 (D. S.C. July 22, 2011); *Hood v. Astrazeneca Pharms, LP*, 744 F. Supp. 2d 590 (N.D. Miss. 2010); *New Mexico v. Ortho-McNeil-Janssen Pharms., Inc.*, No Civ 08-0779, 2009 U.S. Dist. LEXIS 116524 (D. N.M. Jan. 26, 2009); *Commonwealth of Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576 (E.D. Pa. 2007); *State of Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016 (D. Utah 2007); *State of South Carolina v. Eli Lilly & Co., Inc.*, Case No, 7:07-1875, 2007 U.S. Dist. LEXIS 56847 (D. S.C. Aug. 3,

2007); *State ex rel. Nixon v. Mylan Labs.*, 11-cv-01475, 2006 U.S. Dist. LEXIS 32570 (E.D. Mo. May 23, 2006); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 65 (D. Mass. 2006); *Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F. Supp. 2d 516 (E.D. Pa. 2005); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis. 2005); *Minnesota v. Pharmacia Corp.*, Civil No. 05-1394, 2005 U.S. Dist. LEXIS 27638 (D. Minn. 2005).[2] Although such decisions are instructive, this Court, of course, must determine whether federal question jurisdiction lies based on the facts of this action.

   a. Plaintiffs' state-law claims do not necessarily raise a federal issue.

The first step under *Grable* is to determine whether any of the Commonwealth's state-law claims necessarily raise a federal issue. Purdue asserts that the amended complaint alleges two theories of fraud—an indirect theory and a direct theory—that each necessarily raise a federal issue in that they concern whether the Commonwealth was "legally obligated" to pay for supposedly excessive OxyContin prescription costs and other related health care services.

---

[2] Purdue cites almost exclusively to the decisions of one of this nation's most experienced and eminent nisi prius judges—Judge Jack B. Weinstein of the United States District Court for the Eastern District of New York. In the context of an MDL involving the prescription drug Zyprexa, Judge Weinstein has found federal question jurisdiction in comparable Medicaid recovery cases. *See In re Zyprexa Prods. Litig. (New Mexico ex rel. Madrid v. Eli Lilly & Co.)*, Nos. 04-md-1586, 07-cv-1749, 2009 U.S. Dist. LEXIS 20768, at *67 (E.D.N.Y. Mar. 11, 2009) (listing cases in which remand motions were denied). Judge Weinstein has emphasized that the national aspects of the Zyprexa litigation—"illustrated by the global resolution under federal law of fifty state Medicaid liens"—make uniformity in treating claims brought in that MDL proceeding desirable. *In re Zyprexa Prods. Liab. Litig. (Montana ex rel. McGrath v. Eli Lilly & Co.)*, Nos. 04-md-1596, 07-cv-1993, 2008 U.S. Dist. LEXIS 10355, at *7 (E.D.N.Y. Feb. 12, 2008). This action—which involves only Kentucky and Kentucky law—lacks the scope of the Zyprexa MDL and its need for national uniformity. Indeed, almost all of the cases in the *In re OxyContin Antitrust Litigation* MDL involve patent and antitrust issues, not Medicaid recovery.

  Purdue also cites *In re Rezulin Products Liability Litigation (Louisiana ex rel. Foti v. Warner Lambert Co.)*, 00 Civ. 2843, 05 Civ. 8397, Order on Remand (S.D.N.Y. July 20, 2006), where the court adopted the recommendation of Magistrate Judge Theodore H. Katz to deny Louisiana's motion to remand in a Medicaid recovery case. (*See* Ex. 2 to Defs.' Supp. Opp.) However, Judge Katz had deemed the plaintiffs' motion to remand "abandoned" and treated this abandonment as a "concession by Plaintiffs that their claims implicate substantial federal issues in this action which are not overridden by any State interest." (*See* Report & Recommendation at 3-4, Ex. 1 to Defs.' Supp. Opp.)

The Commonwealth alleges that Purdue deceived physicians, patients and the public generally by misrepresenting the safety and efficacy of OxyContin and that, as a result, the Commonwealth paid for prescriptions that never would have been written and medical services that never would have been provided in the absence of the alleged fraud. Under Kentucky law, fraud through misrepresentation requires proof that (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *See Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

Under the indirect theory of fraud, health care providers and patients reasonably relied on Purdue's alleged misrepresentations about OxyContin, but the Commonwealth was injured as a result of those misrepresentations. Kentucky courts have permitted plaintiffs to sue for injuries resulting from misrepresentations made to, or intended for, third parties. *See, e.g.*, *Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton*, 24 F. Supp. 2d 755, 771 (W.D. Ky. 1998); *Highland Motor Transfer Co. v. Heyburn Bldg. Co.*, 237 Ky. 337, 343 (Ky. 1931) ("[T]he right to recover for deceit should not be restricted to the immediate parties making the contract. If a third party is injured by the deceit, he should be allowed to recover against the one who made possible the damages to him by practicing the deceit in the first place.").

Purdue seizes on the fact that the Commonwealth alleges that it was "legally obligated" to incur the Medicaid-related expenses it seeks to recover in this action. (*See*

9

Am. Compl. §§113, 148.) According to Purdue, some of these expenses, in particular those related to addiction treatment services, were likely prohibited by or optional under federal Medicaid law. Purdue then concludes that the Commonwealth cannot prevail on its indirect theory of fraud without proving that it was indeed required under federal law to pay these expenses. But Purdue has not cited nor has this Court found any relevant legal authority for the proposition that the Commonwealth must prove that it was legally obligated, under federal law or otherwise, to pay for the Medicaid-related expenses it seeks to recover in order to prevail on its indirect theory of fraud. Purdue's conclusory assertions are insufficient to meet its burden of showing that the Commonwealth's indirect theory of fraud necessarily raises a federal issue. Of course, Purdue may raise as a defense the issue of the Commonwealth's alleged legal obligations. However, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell*, 478 U.S. at 808.

Purdue also maintains that the Commonwealth's direct fraud-by-omission theory necessarily implicates federal law. This theory posits that Purdue failed to fully disclose to the Commonwealth material information regarding the addictive nature of OxyContin. Under Kentucky law, to prevail on a fraud-by-omission claim, a plaintiff must prove that: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence. *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, --- S.W.3d ----, 2011 Ky. LEXIS 90, at *45-47 (Ky. 2011).

Purdue contends that in order to prove that the alleged fraud was the proximate cause of the Commonwealth's injuries, the Commonwealth must establish that if it had known the allegedly withheld 'truth' about OxyContin, it both would and could have taken actions that would have prevented or limited OxyContin prescriptions from being written for Kentucky Medicaid recipients. The Commonwealth cannot make this showing, Purdue contends, because the federal Medicaid statute severely restricts the ability of state Medicaid programs to limit or restrict coverage for a "covered outpatient drug" subject to a Medicaid rebate agreement. *See* 42 U.S.C. §1396r-8(a), (d). OxyContin, at all relevant times, was a covered outpatient drug subject to a Medicaid rebate agreement. Therefore, Purdue contends, the direct-fraud theory necessarily raises the issue of whether the Commonwealth had the authority under federal Medicaid law to act differently.[3]

The Court need not decide whether the Commonwealth's direct theory of fraud necessarily raises a federal issue because the Court has already found that the Commonwealth's indirect theory of fraud does not. Federal question jurisdiction is not created "[w]here a federal issue is present as only one of multiple theories that could support a particular claim." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005). "One of the key characteristics of a mere 'theory,' as opposed to a distinct claim is that a plaintiff may obtain the relief [it] seeks without prevailing on it." *Id.* at 195.

---

[3] The Commonwealth counters that it had the authority under state law to limit the number of OxyContin prescriptions being written for Kentucky Medicaid recipients by requiring health care providers to obtain "prior authorization" before prescribing OxyContin to a patient. *See* KRS § 205.5632. Prior authorization requires health care providers to contact a patient's insurance provider in order to explain why the drug they seek to prescribe for the patient is medically necessary and to get authorization before writing a prescription. According to the Commonwealth, this extra step results in fewer prescriptions being written for drugs that require prior authorization. Thus, if Purdue had disclosed to the Commonwealth the alleged addictive nature of OxyContin, the Commonwealth contends that it could have and would have acted differently, irrespective of federal law.

11

Here, the Commonwealth has asserted two possible theories as bases for recovery on its fraud claims. It can obtain the relief it seeks if it prevails on its indirect theory of fraud; it need not also prevail on its direct theory in order to be made whole.[4] Accordingly, the Court concludes that plaintiffs' claims do not necessarily raise a federal issue.

      b. Defendants have not shown that a federal issue is disputed or substantial.

Even assuming *arguendo* that the Commonwealth's fraud claims necessarily raise the issue of whether federal law restricts the Commonwealth's ability to limit coverage for OxyContin prescriptions, Purdue has failed to show how under *Grable* this federal issue is disputed or substantial. *Grable* involved a quiet title action in which the federal government had seized the plaintiff's property. The district court was required to determine whether the government had given the plaintiff proper notice of the seizure pursuant to federal tax law. The Court stated that, "[w]hether Grable was given notice within the meaning of the federal statute is . . . an essential element of [his] quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." 545 U.S. at 315. The Court also emphasized the government's "direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.*

This action is easily distinguished from *Grable*. Here, plaintiffs' claims do not require the construction or interpretation of federal law. Nor is there a disputed federal issue. Indeed, the Commonwealth does not contest its legal obligation to reimburse

---

[4]Purdue does not contend that in order to prevail on its indirect theory of fraud, the Commonwealth is required to show that it could and would have acted differently in the absence of the fraud. Nor has Purdue asserted that the Commonwealth must prevail on both of its theories of fraud in order to obtain the relief it seeks with regard to any of its claims. For instance, the conspiracy and concert of action claim—which Purdue contends pleads the elements of a direct fraud-by-omission claim—also contains language to support an indirect theory of fraud claim. (See Am. Compl. §§ 160-162.)

Medicaid claims for OxyContin prescriptions. As one district court aptly put it, '[c]laiming that Defendants wrongly triggered the State's obligation to pay for [a prescription drug] is completely different than claiming that the State should not have such an obligation as a matter of law, despite the requirements of the federal Medicaid statute." *Ortho-McNeil-Janssen*, 2009 U.S. Dist. LEXIS 116524 at *7. "The former claim does not require any construction of the Medicaid statute or the State's obligations under that statute. It merely requires an examination of the facts surrounding Defendants' conduct to determine whether the State's claims, brought under state law, have merit." *Id.* Furthermore, unlike in *Grable*, this action does not involve the administrative action of a federal agency. Accordingly, the Court finds that this action does not raise a federal issue that is either disputed or substantial.

      c. State court is the proper forum for adjudication of this action.

The third requirement of *Grable*, that a federal forum be able to adjudicate the claim "without disturbing any congressionally approved balance of federal and state judicial responsibilities," is also not met here. Purdue asserts that the federal Medicaid program involves an intricate federal regulatory scheme requiring some degree of uniformity in its interpretation. True, but, as other federal district courts have found, it is telling that Congress has specifically obligated states to seek reimbursement of Medicaid funds from legally liable third parties, *see* 42 U.S.C. § 1396a(a)(25)(A), but has provided no federal cause of action to do so. *See Hood*, 744 F. Supp. 2d at 601; *State of Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d 1016, 1023 (D. Utah 2007); *State of South Carolina v. Eli Lilly & Co., Inc.*, Case No, 7:07-1875, 2007 U.S. Dist. LEXIS 56847, at *7-8 (D. S.C. Aug. 3, 2007). "[T]he absence of a federal private right of action [is] evidence relevant

13

to . . . the sensitive judgments about congressional intent that §1331 requires." *See Grable*, 545 U.S. at 318 (internal quotation marks omitted). Thus, Congress arguably intended actions such as this brought by a state attorney general to seek reimbursement of Medicaid funds from an allegedly liable third party be litigated in state court.

Considerations of comity also weigh against adjudicating this action in a federal forum. The Supreme Court has expressed its reluctance to "snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 22 n.22. No such clear rule exists here. The Commonwealth seeks damages for payments that it made on behalf of its Medicaid recipients as well as other equitable and injunctive relief aimed to reduce the alleged scourge of OxyContin addiction and abuse in Kentucky. "Clearly, the state interests involved, and the recovery of state funds heavily tilts the balance in favor of state adjudication." *Mylan Labs.*, 2006 U.S. Dist. LEXIS 32570 at *10; *see also Abbott Labs.*, 390 F. Supp. 2d at 823-24; *Pharmacia*, 2005 U.S. Dist. LEXIS 27638 at *10-11.

Based on the foregoing, the Court finds that it lacks federal question jurisdiction under *Grable*.

### B. Jurisdiction under CAFA

#### 1. *Legal Standard*

Purdue also maintains that this case was properly removed under CAFA because despite not being labeled as such it is in fact a class action. CAFA "expanded the jurisdiction of the federal courts to allow class actions originally filed in state courts that conform to particular requirements to be removed to federal district courts." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin.*

*Corp.*, 603 F.3d 23, 26 (2d Cir. 2010).  In order to be removable under CAFA, the matter in controversy must exceed $5,000,000, 28 U.S.C. §1332(d)(2); there must be at least 100 plaintiffs in the proposed class, *id.* §1332(d)(5)(B); and the parties must be minimally diverse, *id.* §1332(d)(2)(A) (requiring that "any member of a class of plaintiffs is a citizen of a State different from any defendant").  CAFA also requires that the action sought to be removed satisfies the statute's definition of a "class action" or a "mass action."  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons to a class action." *Id.* §1332(d)(1)(B).

Even though the Commonwealth of Kentucky and Pike County are the sole plaintiffs in this action, Purdue contends that the requirements of CAFA are met because Kentucky consumers are the real parties in interest with respect to certain of plaintiffs' claims.  Relatively few courts have addressed whether CAFA's class action provision applies to suits by a state attorney general, and there is no controlling law from the Supreme Court or the Second Circuit on this issue.  Even assuming that such actions are removable and that a "real party in interest" analysis pertains to such suits, the Court finds that this particular action is not removable under CAFA.  Because the Commonwealth of Kentucky and Pike County are the only real parties in interest in this action, CAFA's requirement that the action have at least 100 plaintiffs is not met.[5]  Simply put, this is not a class action.

---

[5] CAFA's requirement that an action have at least 100 plaintiff class members is jurisdictional. *See Blockbuster*, 472 F.3d at 56.

A court determining the real party in interest "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).[6] In order to make this determination, the Court must first identify in what capacity the State brings this action. A State may bring a proprietary suit in which it sues much like a private party suffering a direct, tangible injury. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601-02 (1982). It may also bring a *parens patriae* suit in which it seeks to vindicate a "quasi-sovereign" interest on behalf of its citizens. *Id.*; *see Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 119 (2d Cir. 2002). A State's "quasi-sovereign" interests include protecting the "health and well-being—both physical and economic—of its residents in general." *Id.* at 607. By contrast, where a State brings suit "to pursue the interests of a private party, and pursue[s] those interests only for the sake of [that private party]," the State is merely a "nominal party" and not a real party in interest. *Alfred L. Snapp & Son*, 458 U.S. at 601-02.

   2.  *The Court Lacks Jurisdiction Pursuant to CAFA*

The Commonwealth claims to bring this action in both its proprietary and *parens patriae* capacities. (*See* Am. Compl. ¶ 6.) It seeks (1) damages for a direct, tangible injury it has allegedly suffered—the reimbursement of Medicaid claims involving OxyContin—and (2) equitable and injunctive relief on the basis of its "quasi-sovereign interest" in protecting the health and safety of its citizens. (*See* Am. Compl. ¶ 99 ("The health and safety of the citizens of Kentucky . . . including those who use, have used, or

---

[6] Minimal diversity appears to be met here. For purposes of diversity, a County is a citizen but a State is not. *See Moor v. Cty. of Alameda*, 411 U.S. 693, 717-18 (1973). Thus, at least one plaintiff—Pike County—is diverse from at least one defendant. (*See* Am. Compl. ¶¶ 8-16.)

will use OxyContin, is a matter of great public interest and of legitimate concern to the Commonwealth . . . .'")).

Purdue urges that Kentucky consumers are also real parties in interest because, according to Purdue, the Commonwealth seeks damages on behalf of a discrete group of Kentucky consumers.  In support of this argument, Purdue relies on two cases *Louisiana ex rel. Caldwell v. Allstate Ins.*, 536 F.3d 418 (5th Cir. 2008) and *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010) in which claims filed by state attorneys general were deemed to be subject to CAFA.  Neither case is controlling and both are distinguishable.  In *Caldwell* and *McGraw*, the attorneys general asserted that the defendant companies had violated state antitrust laws and sought treble damages on behalf of citizens who had purchased insurance policies and cable subscriptions, respectively, from those companies.  In *Caldwell*, a divided Fifth Circuit found that Louisiana citizens were the real parties in interest because the State was seeking to recover damages suffered by individual policyholders.  536 F.3d at 429-30.  Similarly, in *McGraw*, the district court found that West Virginia citizens were the real parties in interest because the State sought to recover damages suffered by individual cable subscribers.  705 F. Supp. 2d at 450-51.  In neither case was the State seeking restitution for damages that it as opposed to its citizens had suffered.

Unlike in *Caldwell* and *McGraw*, this action involves the Commonwealth's proprietary interest in recovering monies that it not Kentucky consumers spent reimbursing Medicaid claims involving OxyContin.  The Commonwealth expressly denies seeking any type of relief for losses incurred by Kentucky consumers.  (Pls.' Supp. Mem. of Law at 20-21; Pls.' Reply Mem. at 14.)  Rather, the state Attorney General is

17

fulfilling his responsibility, pursuant to KRS § 15.020 and § 15.060, to pursue an action on behalf of the Commonwealth in order to "collect and recover money due the Commonwealth." *Strong v. Chandler*, 70 S.W.3d 405, 408 (Ky. 2002). Nevertheless, Purdue makes a variety of unavailing arguments as to why certain of the Commonwealth's claims are brought in a representative capacity on behalf of individual Kentucky consumers.

First, Purdue, emphasizing cherry-picked language in the amended complaint, contends that the Commonwealth seeks restitution on behalf of individual consumers for costs they have incurred related to OxyContin. (*See* Am. Compl. ¶ 5, Prayer for Relief ¶ J.) The Court disagrees. The claim for restitution clearly states that the "Commonwealth seeks reimbursement for the health care costs, medical care costs, prescription costs, and rehabilitation and other programs and services costs" that it paid pursuant to its State Medicaid Program. (Am. Compl. § 106.) Nowhere in the restitution claim does the Commonwealth seek damages on behalf of individual Kentucky consumers. Moreover, the Commonwealth has explained that the Attorney General is representing Kentucky citizens indirectly to the extent that they paid taxes, which tax monies are then disbursed from the State Treasury to pay for such programs as Medicaid. Indeed, the restitution claim itself states that "[t]axpayers of the Commonwealth have . . . indirectly expended millions of dollar for their fellow citizens for the unnecessary and excessive prescription costs and health care costs and other related programs and services associated with OxyContin." (Am. Compl. § 104.)

Second, Purdue urges that the Commonwealth's requested relief for "a fund establishing a medical monitoring program" is a claim that belongs solely to individual

18

consumers. (Am. Compl., Prayer for Relief ¶ O.) To the extent that Purdue is correct, the Commonwealth may not be able to obtain its requested relief. This does not change the fact that the Commonwealth's request for a "medical monitoring fund" is a *parens patriae* claim brought on behalf of the Kentucky population as a whole;[7] it is not a claim made at law for damages on behalf of a particular subset of the Kentucky population.

Finally, Purdue maintains that the Commonwealth's claims for strict liability and negligence can only be brought on behalf of Kentucky consumers who were allegedly injured by OxyContin. Purdue's assertion that the Commonwealth lacks standing to bring such claims is beside the point. Again, the mere fact that the Commonwealth might not prevail on its strict liability and negligence claims due to a lack of standing or for failure to state a claim does not render Kentucky citizens the real parties in interest in this action. In both the strict liability and the negligence counts, the Commonwealth unambiguously alleges that *it* suffered injuries for which *it* seeks damages. (Am. Compl. ¶ 119-122, 130-136.) The Commonwealth does not seek damages on behalf of individual Kentucky citizens.

While Purdue is correct that a plaintiff cannot minimize an allegation in the complaint that supports federal jurisdiction, *see Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003), Purdue cannot manufacture jurisdiction where none exists. As Purdue would have it, because the Commonwealth has asserted claims that, according to Purdue, will not succeed unless brought by individual consumers, the Court should

---

[7] The requested "medical monitoring program" would (1) notify individuals who use or used OxyContin of the potential harm from OxyContin, (2) aid in the early diagnosis and treatment of injuries resulting from OxyContin, (3) fund studies and research the effects of OxyContin, (4) create a registry in which relevant demographic and medical information concerning OxyContin users is gathered and maintained, and (5) gather and forward to treating physicians information related to the diagnosis and treatment of injuries which may result from using OxyContin. (*See* Am. Compl., Prayer for Relief ¶ O.)

19

transform this case into a class action. But the Commonwealth has expressly asserted that it only seeks recovery for expenses incurred by the State; it is not asserting any private claims on behalf of Kentucky citizens. The Court sees no reason not to accept the Commonwealth's representations regarding the relief it seeks. *See State of West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011) (refusing to disregard Attorney General's assertion that he was seeking to vindicate West Virginia's interests and did not intend to bring a class action).

Because the Court finds that the Commonwealth of Kentucky and Pike County are the only real parties in interest in this action and therefore CAFA's requirement that the action have at least 100 plaintiff class members is not met, it need not reach the question of whether this action was brought pursuant to a "State statute or rule of judicial procedure" that is analogous to Federal Rule of Civil Procedure 23.

## IV. CONCLUSION

For the foregoing reasons, defendants have failed to meet their burden of establishing that the Court has subject matter jurisdiction over this action. Plaintiffs' motion to remand is granted.

Dated: New York, New York
       September 26, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.