**MANDATE**

N.Y.S.D. Case #
08-cv-3380(SHS)

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand and thirteen.

Before:  Denny Chin,
              *Circuit Judge,*
          Stefan R. Underhill,*
              *District Judge.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 11, 2013

Purdue Pharma L.p., Purdue Pharma, Inc.,
Purdue Pharma Frederick Company, Inc.,
Purdue Pharmaceuticals, L.p., and
P.f. Laboratories, Inc.,

      Defendants-petitioners,

      v.

Commonwealth of Kentucky and
Pike County,

      Plaintiffs-respondents.

**JUDGMENT**
Docket No. 11-4087

The petition for leave to appeal pursuant to 28 U.S.C. § 1453(c)  in the above captioned case from a judgment of the United States District Court for the Southern District of New York was submitted on the district court's record and the parties' briefs.  Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the petition for leave to appeal is DENIED in accordance with the opinion of this court.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 02/11/2013

* Hon. Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

11-4087-mv
Purdue Pharma L.P. v. Commonwealth of Kentucky

1
2                           UNITED STATES COURT OF APPEALS
3
4                               FOR THE SECOND CIRCUIT
5
6                                     August Term, 2012
7
8                                  Docket No. 11-4087-mv
9
10            Submitted: March 6, 2012            Decided: January 9, 2013
11
12          - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
13
14   PURDUE PHARMA L.P., PURDUE PHARMA, INC.,
15   PURDUE PHARMA FREDERICK COMPANY, INC.,
16   PURDUE PHARMACEUTICALS, L.P., and
17   P.F. LABORATORIES, INC.,
18
19   *Defendants-Petitioners*,
20
21   v.
22
23   COMMONWEALTH OF KENTUCKY and
24   PIKE COUNTY,
25
26   *Plaintiffs-Respondents.*
27
28          - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
29   Before:  CHIN, *Circuit Judge*; and UNDERHILL,[*] *District Judge*.[1]
30
31          Petition for leave to appeal pursuant to 28 U.S.C. § 1453(c) following order of remand by

32   the United States District Court for the Southern District of New York (Stein, *J.*), No. 1:08-CV-

33   3380-SHS (No. 1:04-MD-1603-SHS).

34          Petition denied.

_____

[*] Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting
by designation.

[1] Judge Susan L. Carney, originally a member of the panel, has recused herself. The two
remaining members of the panel, who are in agreement, have determined this matter.  *See* 28
U.S.C. § 46(d); 2d Cir. Internal Operating Procedure E; *United States v. Desimone*, 140 F.3d
457, 458-59 (2d Cir. 1998).

|    |                              |                                                                                                                                                                                                                                                   |
|----|------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 1  | For Defendants-Petitioners:  | Timothy C. Hester, Covington & Burling LLP,                                                                                                                                                                                                        |
| 2  |                              | Washington, D.C.; John M. Famularo and Daniel E.                                                                                                                                                                                                   |
| 3  |                              | Danford, Stites & Harbison PLLC, Lexington, KY; Chilton                                                                                                                                                                                            |
| 4  |                              | Davis Varner, Stephen B. Devereaux, Eric M. Wachter, and                                                                                                                                                                                           |
| 5  |                              | Merritt E. McAlister, King & Spalding LLP, Atlanta, GA.                                                                                                                                                                                            |
| 6  |                              |                                                                                                                                                                                                                                                   |
| 7  |                              |                                                                                                                                                                                                                                                   |
| 8  | For Plaintiffs-Respondents:  | Sean Riley and Clay Barkley, Office of the Attorney                                                                                                                                                                                                |
| 9  |                              | General, Frankfort, KY,                                                                                                                                                                                                                            |
| 10 |                              | *Attorneys for the Commonwealth*                                                                                                                                                                                                                   |
| 11 |                              |                                                                                                                                                                                                                                                   |
| 12 |                              | Gary C. Johnson and Rhonda J. Blackburn, Gary C.                                                                                                                                                                                                   |
| 13 |                              | Johnson, P.S.C., Pikeville, KY,                                                                                                                                                                                                                    |
| 14 |                              | *Attorneys for Pike County*                                                                                                                                                                                                                        |

17 UNDERHILL, District Judge.

18   The Commonwealth of Kentucky ("Kentucky" or "the Commonwealth"), through its

19 Attorney General, and Pike County, Kentucky ("the County") (collectively, "Plaintiffs")

20 commenced this action in Kentucky state court against Purdue Pharma, L.P.; Purdue Pharma,

21 Inc.; Purdue Frederick Company, Inc.; Purdue Pharmaceuticals, L.P.; and P.F. Laboratories, Inc.

22 (collectively, "Purdue"), alleging that Purdue violated Kentucky law by misleading health care

23 providers, consumers, and government officials regarding the risks of addiction associated with

24 the prescription drug OxyContin, which Purdue manufactures, markets and sells.  Purdue

25 removed the action to federal court, arguing *inter alia* that Plaintiffs' claims constituted a

26 putative "class action" removable under the Class Action Fairness Act of 2005 ("CAFA"), Pub.

27 L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  Following transfer from

28 the Eastern District of Kentucky to the Southern District of New York, the District Court (Sidney

29 H. Stein, *J.*) granted Plaintiffs' motion to remand, concluding it lacked subject-matter

30 jurisdiction because the suit did not meet CAFA's requirements.  Purdue now seeks leave to

31 appeal the remand order under 28 U.S.C. § 1453(c)(1).  For the reasons that follow, the petition

32 is DENIED.

-2-

I.

Plaintiffs' state court complaint contained the following allegations. Purdue manufactures and sells OxyContin, an opioid analgesic drug used to manage pain. *See* Am. Compl., at ¶¶ 23-24. From 1995 to 2001, Purdue promoted OxyContin to health care providers as "less addictive, less subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other pain medications," despite knowing that such assertions were false or misleading. *Id.* ¶ 42. According to Plaintiffs, Purdue's actions prevented Kentuckians from accurately assessing the appropriate uses and risks of OxyContin, and caused physicians to overprescribe OxyContin, which resulted in widespread addiction and other adverse consequences, including death and "the commission of criminal acts to obtain OxyContin." *Id.* ¶¶ 2, 68, 84. Kentucky, which covers health care costs for indigent and otherwise eligible residents under its Medicaid and Pharmaceutical Assistance Programs, bore significant additional costs as a result of Purdue's actions. Similarly, Pike County spent millions of dollars investigating, apprehending, prosecuting, and incarcerating persons who, "due to the fraudulently concealed addictive nature of OxyContin, have resorted to criminal means to continue their addiction." *Id.* ¶¶ 4, 8-9.

The complaint indicated that the action was brought pursuant to the Kentucky Attorney General's authority under state statutory and common law, "including [his] *parens patriae* authority," to recover, *inter alia*, "all the costs the Commonwealth . . . incurred in paying excessive and unnecessary prescription costs"; "all the costs expended for health care services and programs associated with the diagnosis and treatment of adverse health consequences of OxyContin use"; and "all the costs consumers have incurred in excessive and unnecessary prescription costs related to OxyContin." *Id.* ¶¶ 5-6. Specifically, Plaintiffs asserted the following claims under state law: (1) violation of the Kentucky Medicaid Fraud Statute, KRS §§

-3-

1    205.8463 and 446.070; (2) violation of KRS § 15.060, which authorizes Kentucky's Attorney

2    General to institute an action to recover fraudulent claims that have been paid out of the state

3    treasury; (3) violation of the Kentucky False Advertising Statute, KRS §§ 517.030 and 446.070;

4    (4) public nuisance; (5) unjust enrichment and restitution; (6) indemnity; (7) negligence; (8)

5    violations of state antitrust law; (9) strict liability; (10) common-law fraud; (11) conspiracy and

6    concert of action; and (12) punitive damages.  In addition to damages based on the Medicaid-

7    related expenses described above, the complaint also sought civil penalties, attorneys' fees, and

8    equitable and injunctive relief.

9           Purdue removed the action to federal court, asserting that Plaintiffs' claims (1) raised

10    federal questions under 28 U.S.C. § 1331; and (2) constituted a disguised "class action"

11    removable under CAFA, 28 U.S.C. §§ 1332(d) and 1453.  Following transfer to the United States

12    District Court for the Southern District of New York, Plaintiffs moved to remand, arguing that

13    the District Court lacked subject-matter jurisdiction because all of their claims arose exclusively

14    under state law, and the case otherwise failed to meet CAFA's requirements.  The District Court

15    agreed and granted Plaintiffs' motion to remand in a published decision.  *See In re Oxycontin*

16    *Antitrust Litig.*, 821 F. Supp. 2d 591, 603 (S.D.N.Y. 2011).  This petition timely followed.

17

18                                              **II.**

19           As a general rule, "[a]n order remanding a case . . . is not reviewable on appeal or

20    otherwise."  28 U.S.C. § 1447(d).  Section 1453(c)(1), however, carves out a limited exception:

21    "a court of appeals may accept an appeal from an order of a district court granting or denying a

22    motion to remand a class action to the State court from which it was removed if application is

23    made to the court of appeals [within a specified time period]."  28 U.S.C. § 1453(c)(1).  Despite

24    this narrow expansion of jurisdiction, we retain discretion over whether to accept such appeals,

-4-

1   and our decision "will be guided by consideration of the importance and novelty of the issues

2   raised by the case." *Estate of Pew v. Cardarelli*, 527 F.3d 25, 29 (2d Cir. 2008); *see also Koral*

3   *v. Boeing Co.*, 628 F.3d 945, 946 (7th Cir. 2011) (providing examples of CAFA cases in which

4   leave to appeal was granted "because the appeal presents novel issues").  But even where a

5   petition presents an "important" CAFA issue, courts have nevertheless denied leave to appeal

6   when a determination can be made, on the basis of the petition alone, that the district court

7   correctly remanded the case. *See LG Display Co. v. Madigan*, 665 F.3d 768, 771 (7th Cir.

8   2011).[2]  That determination inevitably requires delving into the merits, but when assessing

9   removal under CAFA, "the jurisdictional inquiry overlaps with the merits," *id.*, and "[a]s always,

10  we have jurisdiction to determine our jurisdiction." *Cardarelli*, 527 F.3d at 28.

11

12                                              **III.**

13          Purdue seeks leave to appeal the District Court's remand order, insisting this case

14  presents an "important" and "unsettled" question under CAFA—namely, whether *parens patriae*

15  lawsuits brought by state attorneys general qualify as "class actions" under CAFA.  *See* Defs.'

16  Pet. For Leave to Appeal, at 1-2.[3]  We concede the importance of the question, but in light of

---

[2] Other courts presented with a petition under section 1453(c)(1) have taken a slightly different path to reach a similar result. Some have granted leave to appeal and decided the merits of the appeal in a single decision. *See AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 394 (4th Cir. 2012).  Others have granted leave to appeal, permitted the parties to submit additional merits briefing, and then affirmed the remand order in a separate decision. *See, e.g., West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 173, 179 (4th Cir. 2011); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 850 (9th Cir. 2011).  Here, because the parties have fully briefed the CAFA-related issues raised in this petition, we follow the Seventh Circuit's approach in *Madigan* for the sake of efficiency.

[3] To the extent that leave to appeal is granted on the CAFA-related issues under section 1453(c)(1), Purdue also seeks review of non-CAFA-related issues addressed in the District Court's remand order; namely, whether the Commonwealth's claims for recovery of Medicaid

-5-

1 recent decisions by our Sister Circuits, we determine that the answer is straightforward. Indeed,

2 every Circuit to consider this precise issue—including the Fourth, the Seventh, the Ninth and,

3 most recently, the Fifth—has reached the same conclusion we reach today: *parens patriae* suits

4 are not removable as "class actions" under CAFA. *See West Virginia ex rel. McGraw v. CVS*

5 *Pharmacy, Inc.*, 646 F.3d 169, 172 (4th Cir. 2011) ("Because this [*parens patriae*] action was

6 brought by the State under state statutes that are not 'similar' to Federal Rule of Civil Procedure

7 23, we conclude that it is not removable under CAFA as a class action."); *Madigan*, 665 F.3d at

8 774 (holding *parens patriae* action was not removable as a "class action" nor as a "mass action"

9 under CAFA); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848-49 (9th Cir. 2011)

10 ("[P]*arens patriae* lawsuits are not class actions within the meaning of CAFA . . . ."); *Mississippi*

11 *ex rel. Hood v. AU Optronics Corp.*, __ F.3d __, 2012 WL 5871651, at *1, *5 (5th Cir. Nov. 21,

12 2012) (holding *parens patriae* action by state attorney general was not removable as a "class

13 action" under CAFA, but was otherwise removable under CAFA's "mass action" provision).

14 Because this action is not a "class action" within the meaning of CAFA, federal jurisdiction does

15 not exist to hear this case, and Purdue's petition must be denied.

16                                                      A.

17         We begin with the apodictic observation that "federal courts are courts of limited

18 jurisdiction" and, as such, "lack the power to disregard such limits as have been imposed by the

19 Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v.*

20 *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quotation omitted). Congress has granted district courts

21 original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and

---

expenditures raise a question of federal law sufficient to confer jurisdiction under 28 U.S.C. §
1331. *See* Defs.' Pet. For Leave to Appeal, at 14. Because we decline to grant leave to appeal
the CAFA-related issues, we lack jurisdiction over the others. *See* 28 U.S.C. § 1447(d).

1    certain cases between citizens of different states, so long as the requirements of complete

2    diversity and amount in controversy are met, *see* 28 U.S.C. § 1332.

3            In tandem with this limited grant of jurisdiction, the "federal removal statute allows a

4    defendant to remove an action to the United States District Court in 'any civil action brought in a

5    State court of which the district courts of the United States have original jurisdiction.'" *Bounds*

6    *v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. §

7    1441(a)).  However, "[i]n light of the congressional intent to restrict federal court jurisdiction, as

8    well as the importance of preserving the independence of state governments, federal courts

9    construe the removal statute narrowly, resolving any doubts against removability." *Lupo v.*

10   *Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quotation omitted).

11           CAFA "expanded the jurisdiction of the federal courts to allow class actions originally

12   filed in state courts that conform to particular requirements to be removed to federal district

13   courts." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603

14   F.3d 23, 26 (2d Cir. 2010).  In general, CAFA amended the diversity statute to confer federal

15   jurisdiction over certain class actions where: (1) the proposed class contains at least 100

16   members (the "numerosity" requirement); (2) minimal diversity exists between the parties, (i.e.,

17   where "any member of a class of plaintiffs is a citizen of a State different from any defendant");

18   and (3) the aggregate amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(2)-(6).

19           CAFA's reach, however, is limited in the first instance to actions that qualify as either a

20   "class action" or a "mass action."  *See* 28 U.S.C. § 1332(d)(1)-(2), (11); 28 U.S.C. § 1453(b).

21   CAFA defines the term "class action" as "any civil action filed under rule 23 of the Federal

22   Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an

23   action to be brought by 1 or more representative persons as a class action."  28 U.S.C. §

24   1332(d)(1)(B).  A "mass action," in contrast, is defined as "any civil action . . . in which

-7-

1    monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that

2    the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist

3    only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount

4    requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i).[4]  Actions that fail to fit into

5    one of these two statutory categories will fall outside CAFA's jurisdictional orbit, regardless

6    whether they meet the other prerequisites of numerosity, minimal diversity, and amount in

7    controversy.

8                                                       B.

9           Purdue removed this action as a purported "class action" under CAFA.[5]  The threshold

10   inquiry, therefore, is whether this action meets CAFA's definition of a "class action."  We begin

11   our analysis, as we must, with the plain language of the statute.  *See Conn. Nat'l Bank v.*

---

[4] The definition of "mass action" specifically excludes class actions certified or proposed to be certified under Rule 23.  *See* 28 U.S.C. § 1332(d)(11)(B), (C)(ii).  But CAFA adds a rather confusing semantic twist:  "For purposes of this subsection and section 1453, a mass action *shall be deemed to be a class action* removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." 28 U.S.C. § 1332(d)(11)(A) (emphasis added).  This "peculiar" drafting, wrote one Court, "gives mass actions the character of a kind of statutory Janus; under CAFA, a mass action simultaneously *is* a class action (for CAFA's purposes) and *is not* a class action (in the traditional sense of Rule 23 and analogous state law provisions)." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1195 n.27 (11th Cir. 2007).  We note this statutory peculiarity merely to clarify that, for purposes of this opinion, "class actions" and "mass actions" are two distinct categories.  Thus, where we refer to "class actions" under CAFA, we mean class actions as defined by section 1332(d)(1)(B), not the more inclusive definition under section 1332(d)(11)(A).

[5] Purdue does not contend that this action qualifies as a "mass action" under CAFA.  *See* Defs.' Pet. For Leave to Appeal, at 6 ("Purdue properly removed this action under CAFA because Kentucky consumers are real parties in interest to this case and the claims brought on their behalf are governed by a state rule of procedure 'authorizing an action to be brought by 1 or more representative persons as a class action.'" (quoting 28 U.S.C. § 1332(d)(1)(B))).  Therefore, we need not—and do not—address today whether this action could otherwise qualify as a "mass action."  We do note, however, that the statutory definition of "mass action" explicitly excludes actions that, *inter alia*, assert claims "on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action."  28 U.S.C. § 1332(d)(11)(B)(ii)(III).

-8-

1    *Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute, a court should always turn

2    first to [this] one, cardinal canon before all others. . . .  When the words of a statute are

3    unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (quotation

4    omitted).  As noted above, CAFA defines a "class action" as "any civil action *filed under* rule 23

5    of the Federal Rules of Civil Procedure or *similar* State statute or rule of judicial procedure

6    authorizing an action to be brought by 1 or more representative persons *as a class action*."  28

7    U.S.C. § 1332(d)(1)(B) (emphasis added).  "While the statutory definition is, to some degree,

8    circular," *CVS Pharmacy, Inc.*, 646 F.3d at 174, it is nonetheless unambiguous.  *See Chimei*

9    *Innolux Corp.*, 659 F.3d at 848 ("There is no ambiguity in CAFA's definition of class action.").

10   To qualify as a "class action" within the meaning of CAFA, the action must be filed under a

11   statute or rule that is both similar to Rule 23 and authorizes the action to proceed "as a class

12   action."  *See id.*  Because Plaintiffs' state-court complaint was not filed under Federal Rule of

13   Civil Procedure 23, we must consider whether the suit was "filed under" a state statute or rule of

14   judicial procedure "similar" to Rule 23 that authorizes a class action.

15                                                    1.

16          States generally file suit in federal court in one of three capacities:  (1) "proprietary suits

17   in which the State sues much like a private party suffering a direct, tangible injury"; (2)

18   "sovereignty suits requesting adjudication of boundary disputes or water rights"; or (3) "*parens*

19   *patriae* suits in which States litigate to protect 'quasi-sovereign' interests.'"  *Connecticut v.*

20   *Cahill*, 217 F.3d 93, 97 (2d Cir. 2000) (internal citations omitted).  The *parens patriae* (i.e.,

21   "parent of the country") doctrine has its antecedent in the common-law concept of the "royal

22   prerogative," that is, the king's inherent power to act as the guardian for those "under legal

23   disabilities to act for themselves."  *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257 (1972).  To

24   assert *parens patriae* standing, the State (or Commonwealth) must articulate a "quasi-sovereign

-9-

1   interest" distinct "from the interests of particular private parties," such as an "interest in the

2   health and well-being—both physical and economic—of its residents in general." *Alfred L.*

3   *Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). The State may show such an

4   interest by alleging "injury to a sufficiently substantial segment of its population." *Id.* However,

5   "if the State is only a nominal party without a real interest of its own—then it will not have

6   standing under the *parens patriae* doctrine." *Id.* at 600; *see also In re Baldwin-United Corp.*,

7   770 F.2d 328, 341 (2d Cir. 1985) ("[W]hen the state merely asserts the personal claims of its

8   citizens, it is not the real party in interest and cannot claim parens patriae standing.").

9        Here, Plaintiffs claim to bring this suit in both proprietary and *parens patriae* capacities,

10   seeking: (1) restitution and reimbursement for damages suffered directly by the Commonwealth

11   and the County as a result of, *inter alia*, unnecessary prescriptions costs and Medicaid claims

12   paid out of the state treasury; (2) civil penalties, fines and attorneys' fees; and (3) equitable and

13   injunctive relief based on "quasi-sovereign interests" in protecting the health and safety of

14   citizens. Specifically, Plaintiffs' state-court complaint alleged violations of the following state

15   statutes: (1) KRS § 205.8463, Kentucky's Medicaid Fraud Statute; (2) KRS § 517.030,

16   Kentucky's False Advertising Statute; and (3) KRS §§ 367.110-300, the antitrust provisions of

17   Kentucky's Consumer Protection Act. In addition, the complaint alleged the following common

18   law violations: (1) public nuisance; (2) unjust enrichment and restitution; (3) indemnity; (4)

19   negligence; (5) strict liability; and (6) common-law fraud.

20        Plaintiffs seek to enforce these various claims under two different statutory provisions:

21   (1) KRS § 446.070; and (2) KRS § 15.060. The former provision establishes a general private

22   right of action under state law: "A *person* injured by the violation of *any statute* may recover

23   from the offender such damages as he sustained by reason of the violation, although a penalty or

24   forfeiture is imposed for such violation." KRS § 446.070 (emphasis added). Under Kentucky

-10-

1   law, it is well-settled that the Commonwealth is itself a "person" with standing to bring an action

2   under KRS § 446.070 through its Attorney General.  *See United States v. Kentucky Nat'l Ins.*

3   *Co.*, No. 89-6246, 1990 WL 78173, at *2 (6th Cir. June 11, 1990) (unpublished) ("Kentucky's

4   highest court [has] held that the state itself, as a body-politic, is a 'person' that can maintain an

5   action under KRS 446.070.") (citing *Commonwealth v. Shouse*, 245 S.W.2d 441, 442 (Ky.

6   1952)).  The latter provision provides that the Attorney General shall: "When he believes that

7   any fraudulent, erroneous or illegal fee bill, account, credit, charge or claim has been erroneously

8   or improperly approved, allowed or paid out of the Treasury to any person, institute the

9   necessary actions to recover the same."  KRS § 15.060(2).  In combination, these statutes

10  provide the procedural mechanism through which Plaintiffs bring their substantive claims.

11          None of these statutes, however, authorizes suit "as a class action," nor does either bear

12  any resemblance to Rule 23.  None, for example, imposes any of the familiar hallmarks of Rule

13  23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the

14  requirement of class certification.[6]  *See, e.g.*, *AU Optronics Corp.*, 2012 WL 5871651, at *1

15  (holding that state attorney general's action did not qualify as a "class action" under CAFA

16  because "the [Mississippi Antitrust Act] does not require that suits brought by the State satisfy

17  any requirements that resemble the adequacy, numerosity, commonality, and typicality

18  requirements of class action lawsuits under Rule 23"); *cf. Teamsters Local 445 Freight Div.*

19  *Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) (noting "the

20  preconditions of Rule 23(a) [are] numerosity, commonality, typicality, and adequacy").  Nor do

---

[6] Indeed, CAFA's statutory language seems to imply, albeit obliquely, that the term "class actions" refers to actions subject to some form of class certification process.  *See* 28 U.S.C. § 1332(d)(1)(D) ("[T]he term 'class members' means the persons (named or unnamed) who fall within the definition of the *proposed or certified class* in a class action.") (emphasis added); *see also* 28 U.S.C. § 1332(d)(11)(C)(ii).

-11-

1    these statutes provide for notice or opt-out rights to protect absentees who may find themselves

2    unknowingly bound by the court's judgment.  *Cf. West Virginia ex rel. McGraw v. Comcast*

3    *Corp.*, 705 F. Supp. 2d 441, 452-54 (E.D. Pa. 2010) (holding that lawsuit brought by state

4    attorney general pursuant to state statute that provided for adequate representation, notice and

5    opt-out rights for represented citizens was sufficiently similar to Rule 23 to qualify the action as

6    a "class action" for CAFA purposes).   Although Kentucky's state-law analog to Rule 23—

7    Kentucky Rule of Civil Procedure ("KRCP") 23—specifically provides for these customary

8    class-action procedures, Plaintiffs' complaint makes no mention of KRCP 23.[7]

9           "[W]hile a 'similar' state statute or rule need not contain all of the other conditions and

10   administrative aspects of Rule 23, it must, at a minimum, provide a procedure by which a

11   member of a class whose claim is typical of all members of the class can bring an action not only

12   on his own behalf but also on behalf of all others in the class[.]"  *CVS Pharmacy, Inc.*, 646 F.3d

---

[7] Purdue also argues that, although the complaint contains no express reference to KRS § 367.200 or KRCP 23, a careful review of the claims raised therein reveals that the Attorney General is actually relying, albeit surreptitiously, on those provisions to assert representative claims for restitution on behalf of individual consumers.  Building on that premise, Purdue argues that, because none of the statutes cited in the complaint specify the procedural mechanisms through which such representative claims are brought, KRS § 367.200 and KRCP 23 automatically apply to fill the gap.

    To the extent we understand this serpentine line of reasoning, we disagree.  Under CAFA's plain language, a "class action" is defined as a civil action "*filed under*" a state-law equivalent to Rule 23.  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  Neither KRS § 367.200 nor KRCP 23 are mentioned anywhere in Plaintiffs' complaint, and we are hard pressed to understand how a suit may be "filed under" a statute or rule that does not even appear on the face of the complaint.  *See In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 664 (E.D. La. 2012) ("Congress chose to define 'class action' not in terms of joinder of individual claims or by representative relief in general, but in terms of the statute or rule the case is filed under. . . .  If this is a formalistic outcome, it is a formalism dictated by Congress.").  Moreover, the mere fact that the Attorney General *could have* utilized some other statutory or procedural mechanism to recover restitution is beside the point.  Plaintiffs, as masters of their complaint, are always free to choose the statutory provisions under which they will bring their claims.  *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon[.]").  Purdue's argument is therefore unavailing.

-12-

1    at 175.  *Parens patriae* actions, however, implicate few if any of these class-like procedures.  *See*

2    *id.* at 175-77; *Madigan*, 665 F.3d at 772; *see also West Virginia v. Chas. Pfizer & Co.*, 440 F.2d

3    1079, 1089 (2d Cir. 1971) (distinguishing between the "alternative theories" of *parens patriae*

4    actions and class actions under Rule 23).   This suit, for example, was filed not by a class

5    representative on behalf of similarly-situated plaintiffs, but by the Attorney General on behalf of

6    the sovereign.  Unlike private class representatives, "the Attorney General is not designated as a

7    member of the class whose claim would be typical of the claims of class members."  *CVS*

8    *Pharmacy, Inc.*, 646 F.3d at 176.  Instead, the Attorney General is granted "statutory authority to

9    sue in *parens patriae* and need not demonstrate standing through a representative injury nor

10   obtain certification of a class in order to recover on behalf of individuals."  *Chimei Innolux*

11   *Corp.*, 659 F.3d at 848.  In form as well as function, *parens patriae* suits lack the equivalency to

12   Rule 23 that CAFA demands.  Accordingly, because this action was not "filed under" a state rule

13   or statute "similar" to Rule 23, it does not qualify as a "class action" within the meaning of

14   CAFA.  28 U.S.C. § 1332(d)(1)(B).

15                                              2.

16            Against this straightforward application of CAFA's statutory prescriptions, Purdue puts

17   forward several arguments in favor of removal—none of which is convincing.

18            In Purdue's estimation, there is more to this case than meets the eye.  We are therefore

19   urged to look past the pleadings, the named parties, and the stated causes of action to deduce the

20   true nature of this proceeding.  By "piercing the pleadings," and dissecting the complaint claim

21   by claim, Purdue hopes we will conclude that, for certain claims, the "real parties in interest" are

22   not the Commonwealth or the County, but *individual consumers* for whom the Attorney General

23   is acting, in effect, as a disguised class representative.  Purdue buttresses this argument with

24   choice phrases plucked from the complaint—most notably, a single sentence from the "Prayer

-13-

1     for Relief," which seeks "restitution and reimbursement for all prescription costs *consumers* have

2     incurred in excessive and unnecessary prescription costs related to OxyContin."  Prayer for

3     Relief, at ¶ H (emphasis added).  Building on this claim-by-claim approach, Purdue presses us to

4     conclude that CAFA's requirements for minimal diversity, numerosity, and amount in

5     controversy are satisfied.[8]

6           The Supreme Court has held that "the 'citizens' upon whose diversity a plaintiff grounds

7     jurisdiction must be real and substantial parties to the controversy."  *Navarro Sav. Ass'n v. Lee*,

8     446 U.S. 458, 460 (1980).  Accordingly, courts "must disregard nominal or formal parties and

9     rest jurisdiction only upon the citizenship of real parties to the controversy."  *Id.* at 461.  In

10    determining whether a State is a real party in interest, we have held that "inquiry must be made

11    as to the 'essential nature and effect of the proceeding.'"  *Finkielstain v. Seidel*, 857 F.2d 893,

12    895 (2d Cir. 1988) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)); *see*

13    *also Ferguson v. Ross*, 38 F. 161, 162-63 (C.C.E.D.N.Y. 1889) ("Courts will look behind and

14    through the nominal parties on the record to ascertain who are the real parties to the suit, and will

15    determine whether a state is the real party to an action brought by or against its officer by a

16    consideration of the nature of the case as presented *by the whole record*.") (emphasis added).

---

[8] Conceding, as it must, that Plaintiffs' enforcement-related claims for civil penalties, equitable and injunctive relief, and damages due the Commonwealth are properly brought pursuant to the Commonwealth's proprietary and *parens patriae* authority, Purdue nonetheless relies on the "claim-by-claim" approach to argue that Plaintiffs are not the real parties in interest for restitution claims allegedly brought on behalf, and for the benefit, of a circumscribed group of consumers.  Putting aside for the moment our skepticism that a real-party-in-interest analysis is appropriate under the circumstances of this case, we nevertheless take issue with Purdue's narrow characterization of Plaintiffs' allegations.  Even assuming the complaint seeks certain remedies that could be characterized as class relief, the overall thrust of the complaint is to bring a single action by the sovereign to protect the health and welfare of its residents in general, not to maintain all of their individual claims as a class action.

-14-

1    As authority for its claim-by-claim approach, Purdue cites *Louisiana ex rel. Caldwell v.*

2    *Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).   In *Caldwell*, the Fifth Circuit declined to

3    remand an attorney general's antitrust action in which the State sought to collect, under its

4    *parens patriae* authority, treble damages on behalf of certain citizen-policyholders.  *Id.* at 422-

5    23, 432.  Noting that Congress, in passing CAFA, had "emphasized that the term 'class action'

6    should be defined broadly to prevent 'jurisdictional gamesmanship,'" *id.* at 424 (quoting S. Rep.

7    No. 109-14, at 35 (2005)), the court analyzed the real parties in interest on a claim-by-claim

8    basis, rather than looking at the lawsuit as a whole.  *Id.* at 425, 429-30.  After carefully

9    considering whether the State or its citizens were the "real parties" with respect to each type of

10   relief sought, the Court "conclude[d] that as far as the State's request for treble damages is

11   concerned, the policyholders are the real parties in interest," and the action was therefore

12   properly removed as a "mass action" under CAFA.  *Id.* at 429-30.  Relying heavily on *Caldwell*,

13   and arguing that this action, too, is merely masquerading as a *parens patriae* action to avoid

14   CAFA's reach, Purdue invites us to adopt the claim-by-claim approach to unmask the "class

15   action" lurking underneath.

16   We decline that invitation.

17   First, *Caldwell*'s holding addresses only CAFA's "*mass action*" provisions, not the "class

18   action" provisions we encounter here.  *See Caldwell*, 536 F.3d at 430. ("Since we have

19   concluded that this case was properly removed under CAFA's 'mass action' provision, we need

20   not address whether this lawsuit could, following further proceedings on remand, properly

21   proceed as a class action under CAFA."); *see also In re Vioxx Prods. Liab. Litig.*, 843 F. Supp.

22   2d 654, 660 (E.D. La. 2012) ("[T]he Fifth Circuit's precise holding in *Caldwell* is limited to the

23   CAFA definition of mass actions, not class actions. The court expressly declined to decide

24   whether the *parens patriae* lawsuit could also proceed as a class action on remand . . . .").

-15-

1   Purdue removed this action as a "class action," and has never contended that this action qualifies

2   as a "mass action."[9]  Therefore, *Caldwell*'s reasoning is inapposite.

3          Second, we note that the "claim-by-claim" approach has been roundly criticized, and the

4   "whole-complaint" approach has emerged as the majority rule.  *See, e.g.*, *AU Optronics Corp. v.*

5   *South Carolina*, 699 F.3d 385, 390, 393-94 (4th Cir. 2012) (addressing application of CAFA's

6   "mass action" provisions by "adopting the whole-case approach and rejecting the claim-by-claim

7   approach"); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 669-70 (9th Cir. 2012) (employing "the

8   approach of looking at the case as a whole to determine the real party in interest, rather than the

9   claim-by-claim approach adopted in *Caldwell*"); *Madigan*, 665 F.3d at 773-74 (rejecting

10  *Caldwell*'s claim-by-claim approach, noting "just because CAFA was meant to expand federal

11  courts' jurisdiction over class actions, it does not follow that federal courts are required to

12  deviate from the traditional 'whole complaint' analysis when evaluating whether a State is the

13  real party in interest in a *parens patriae* case") (internal quotation omitted); *see also Ohio v.*

14  *GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 745 (N.D. Ohio 2011) ("[A] majority of jurisdictions .

15  . . have looked at a state's complaint as a whole to determine whether the state is the real-party-

16  in-interest.").

---

[9] Purdue likely had good reason to remove this action solely as a "class action," and not as a "mass action."  Shortly after filing its notice of removal, Purdue moved to transfer this case from the Eastern District of Kentucky to the Southern District of New York for inclusion in the Multi-District Litigation ("MDL") Court (*In re Oxycontin Antitrust Litigation*), No. 04-MDL-1603 (SHS).  Although CAFA permits defendants to remove state-court actions as either a class action or a mass action, a removed *mass action* cannot be transferred to an MDL Court—as Purdue did here—without the consent of a majority of the plaintiffs.  *See* 28 U.S.C. § 1332(d)(11)(C)(i) ("Any action(s) removed to Federal court pursuant to [section 1332(d)(11)] shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.").

-16-

1       We have not yet passed on whether the real-party-in-interest inquiry should be made on

2  the basis of the whole complaint or claim by claim, and district courts within this Circuit—

3  considering the issue both before and after CAFA—appear to be split.  Some have applied a

4  claim-by-claim approach.  *See, e.g.*, *Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363, 370-71

5  (D. Conn. 1979) (analyzing separately each type of relief sought in the State's complaint to

6  determine whether the State was the real party in interest for diversity purposes); *see also*

7  *Connecticut v. Chubb Group of Ins. Cos.*, No. 3:11-cv-997, 2012 WL 1110488, at *3 (D. Conn.

8  Mar. 31, 2012) (following *Levi Strauss*, 471 F. Supp. at 370-71); *Butler v. Cadbury Beverages,*

9  *Inc.*, No. 3:97-cv-2241, 1998 WL 422863, at *2 (D. Conn. July 1, 1998) (same).  Others have

10  looked to the complaint as a whole.  *See New York ex rel. Abrams v. General Motors Corp.*, 547

11  F. Supp. 703, 704-07 (S.D.N.Y. 1982) (looking to "the primary purpose of the action" to

12  determine the real party in interest); *MyInfoGuard, LLC v. Sorrell*, Nos. 2:12-cv-074, 2:12-cv-

13  102, 2012 WL 5469913, at *4-5 (D. Vt. Nov. 9, 2012) (rejecting *Caldwell* and stating "[t]his

14  Court adopts the wholesale approach"); *Connecticut v. Moody's Corp.*, No. 3:10-cv-546, 2011

15  WL 63905, at *3 (D. Conn. Jan. 5, 2011) (considering "the State's stake in the litigation as a

16  whole"); *New York ex rel. Cuomo v. Charles Schwab & Co., Inc.*, No. 09-cv-7709, 2010 WL

17  286629, at *4-6 (S.D.N.Y. Jan. 19, 2010) (same).

18       But we need not decide that issue today.  Whatever the comparative merits of a "claim-

19  by-claim" versus "whole-complaint" approach for purposes of determining *diversity*,[10] the real-

20  party-in-interest analysis has no bearing on the separate—and ultimately dispositive—question

---

[10] We note that, under the circumstances of this case, minimal diversity appears to be met as a result of Pike County's presence as a party-plaintiff.  *See Illinois v. City of Milwaukee*, 406 U.S. 91, 97 (1972) ("It is well settled that for the purposes of diversity of citizenship, political subdivisions are citizens of their respective States.").  Thus, at least one plaintiff is diverse from one defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

-17-

1    whether this suit qualifies as a "class action" under CAFA (i.e., whether the suit is "filed under"

2    a statute or rule "similar" to Rule 23 and authorizing suit "as a class action," 28 U.S.C. §

3    1332(d)(1)(B)).  Even assuming that consumers are the "real parties" for certain discrete claims

4    asserted by the Attorney General, that simply means that the citizenship of those consumers—

5    rather than the "non-citizenship" of the State, *see Stone v. South Carolina*, 117 U.S. 430, 433

6    (1886) ("[A] state cannot, in the nature of things, be a citizen of any state.")—counts for

7    purposes of meeting CAFA's minimal diversity requirement.  *See Lee*, 446 U.S. at 460 ("[T]he

8    'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial

9    parties to the controversy.").  But that determination does not necessarily negate the *parens-*

10   *patriae* nature of the action, *cf.* Fed. R. Civ. P. 17(a)(1) (parties "authorized by statute" may "sue

11   in their own names without joining the person for whose benefit the action is brought"), nor does

12   it transform the action into a "class action" removable under CAFA.[11]   Having concluded, in the

13   first instance, that this *parens patriae* action is not a "class action" within the plain meaning of

14   CAFA, our inquiry is at an end.  We need not "pierce the pleadings" any further, particularly in

15   light of the Supreme Court's directive to construe removal statutes strictly and resolve doubts in

16   favor of remand.  *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32-33 (2002); *see*

17   *also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983) (noting

18   that, out of "considerations of comity," federal courts should be "reluctant to snatch cases which

19   a State has brought from the courts of that State, unless some clear rule demands it").

---

[11] Indeed, even if we were to determine that Plaintiffs lacked *parens patriae* standing altogether—a question we do not reach today, *see CVS Pharmacy, Inc.*, 646 F.3d at 176 n.2 ("[W]hile we conclude that this action is a *parens patriae* action, based on the State's deterrence and consumer protection interests, that conclusion is not essential to the separate, and more meaningful determination that the action in this case was not brought under a procedure 'similar' to Rule 23.")—that determination would leave Plaintiffs not with a "class action" removable under CAFA, but with no justiciable action at all.

-18-

1    One final point.  Our decision today merely concerns CAFA's jurisdictional reach over

2    this action, not whether the action is otherwise sufficient as a matter of state law.  Whether

3    Plaintiffs may proceed and ultimately recover on their claims presents complex questions of

4    Kentucky law, which we only see through *Erie*'s glass darkly, and upon which we express no

5    opinion.

6

7                                                    **IV.**

8    In sum, the District Court correctly determined that Plaintiffs' action is not a "class

9    action" as defined in CAFA, and therefore the case was properly remanded.  The petition for

10   leave to appeal is DENIED.

-19-